UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNE F. DURKIN,

    Plaintiff,

vs.

VERIZON, NEW YORK, INC.

    Defendants.

---------------------------------------------------x

COMPLAINT

'05 CIV 957

ECF

ROBINSON

By and through her counsel, Michael H. Sussman, plaintiff hereby complains of defendants as follows:

I. **PARTIES**

1. Plaintiff Anne F. Durkin is a resident of the County of Dutchess, State of New York, within this judicial district.

2. Defendant Verizon, New York, Inc. is a private company organized pursuant to the laws of the State of New York and conducting business within this judicial district. It employs more than 15 people and may sue and be sued.

II. **JURISDICTION**

3. This Honorable Court has jurisdiction over this matter pursuant to 42 U.S.C. sec. 2000e-5, **et. seq.**, 28 U.S.C. secs. 1331, 1343 (3) & (4) and 1367 and 42 U.S.C. sec. 1988. The ancillary state claim arises out of the same nucleus of

-1-

operative facts as the federal claims.

4. On January 6, 2002, plaintiff filed an complaint of unlawful gender discrimination with the New York State Division of Human Rights [SDHR]. SDHR dual filed this Complaint with the Equal Employment Opportunity Commission [EEOC]. [Exhibit 1]

5. On or about March 3, 2004, the SDHR found probable cause that defendant had violated plaintiff's rights and discriminated against her on the basis of her gender. [Exhibit 2].

6. On or about January 10, 2005, the EEOC issued plaintiff a right to sue letter relating to the November 15, 2001 complaint. [Exhibit 3].

7. Thereafter, in or about September 2004, plaintiff filed a complaint of retaliation with the EEOC. [Exhibit 4].

8. The EEOC has declined to issue a right to sue letter on the latter complaint, but this Court has jurisdiction over the issues raised therein as plaintiff alleges that they represent retaliation for the filing of her prior EEOC complaint and no right to sue letter is required in such an instance.

III. **FACTUAL ALLEGATIONS**

9. Plaintiff commenced employment with defendant in 1981. Other than time off for two births, leg and mouth surgeries, plaintiff worked continuously for

the defendant.

10. By July 2000, plaintiff worked as a central office technician in New Rochelle, earning more than $50,000/year.

11. The position of central office technician was non-managerial and plaintiff was a member of Local 1103, CWA.

12. Colin Williams supervised plaintiff in 2000, followed by Lou Mango, who held this responsibility for more than one year.

13. In the fall 2000, two other female central office technicians, Valerie Vaccaro and Natalie McKenna, began sexually harassing plaintiff.

14. Such sexual harassment included, though it was not limited, to the following acts: pulling open plaintiff's shirt and telling a male worker to look at this one; spreading rumors that plaintiff did not wear underwear; telling co-workers to call her "Trailer Park Anny"; writing "Don't sexually harass Anny" on a wall on the first floor; commenting on her breasts and asking to see them and asking her if she wore a special bra.

15. Additionally, when plaintiff assisted a male co-worker, one of the women got on the intercom and started making kissing/lovemaking sounds in a highly audible manner, causing plaintiff embarrassment and affecting her capacity to perform her job duties.

16. Plaintiff complained to Williams and then Mango about the sexual harassment she was experiencing.

17. Plaintiff also complained to her second line supervisor, MaryAnn Sniffen, about the sexual harassment she was experiencing..

18. Plaintiff finally complained to defendant's internal equal opportunity unit.

19. From these sources, plaintiff received no relief and, instead, was told that she had to get used to this treatment, that this is what happens with techs and that she should change her conduct.

20. The internal EEO officers interviewed the offending peers, but took no disciplinary action against them.

21. After the sexual harassment became more aggravated, plaintiff complained again to defendant's internal EEO, but was never advised that the offending women had been disciplined.

22. During the last fall and early winter of 2000, the sexual harassment continued, with comments about plaintiff's body. In addition and in retaliation for her use of the company's own equal opportunity process, plaintiff's work was sabotaged, her tools thrown out and she was denied access to a phone and to her mail.

23. In January 2001, plaintiff complained to Ms. Sniffen who told her to comply with an unenforced dress code.

24. In October 2001, Vaccaro told plaintiff's peers that you had to have breasts to get what you want at defendant's employ.

25. Shortly thereafter, she and another female, McLynn, came to work with their bras stuffed and stated they were going to be plaintiff for Halloween.

26. A third co-worker, a male, took photos of them with their bras stuffed.

27. Subsequently, three females wore their bras outside of their shirts.

28. When management inquired as to their conduct, the three women indicated that they wanted plaintiff removed from the work place.

29. As a direct consequence of this harassment and the defendant's failure to meaningfully respond, plaintiff took a leave of absence on October 18, 2001.

30. Plaintiff remained on this leave of absence until June 2002, when she returned to work in Poughkeepsie.

31. Upon this assignment, plaintiff was dispatched to an office with two other women. She was not provided a desk.

32. Defendant promised to train plaintiff for several distinct job opportunities, but, she did not receive any training.

33. In early September 2004, plaintiff was advised that defendant intended

to downgrade her from the position of central office technician to the position of central operator and to transfer her back to the building in Peekskill where one of the women who had sexually harassed her was working.

34. At the time it advised plaintiff of its intent to transfer her back to Westchester, defendant was paying for plaintiff's visits to a psychologist, who she started to see due to the sexual harassment she had experienced in the workplace.

35. After learning of the defendant's plan to transfer plaintiff back to Westchester, her psychologist opposed this idea and advised plaintiff not to report to that facility as even the thought of doing so was making plaintiff highly anxious and upset.

36. Since September 2004, plaintiff has been out on worker compensation, receiving a portion of her salary. Her absence is directly related to the prior sexual harassment she suffered and defendant's lame response thereto.

37. But for defendant's retaliatory conduct - transferring plaintiff back to the Peekskill location despite the severe emotional difficulty that transfer caused her - plaintiff would not have suffered the anxiety, upset and loss of income she has been suffering since September 2004.

38. As a direct consequence of the sexual harassment which defendant condoned in 2000-01, plaintiff was caused depression, anxiety, embarrassment

and humiliation.

39. As a direct consequence of the retaliation plaintiff has experienced since September 2004, plaintiff has lost salary and suffered anxiety, depression and embarrassment.

## IV. **CAUSES OF ACTION**

40. Plaintiff incorporates paras. 1-39 as if fully re-written herein.

41. By and through the conduct set forth above, defendant has violated plaintiff's rights as provided by 42 U.S.C. sec. 2000e-5, **et. seq.**, creating a sexually hostile work environment, discriminated against her on the basis of gender and retaliated against her for his prior statutorily-protected activity.

42. By and through the conduct set forth above, defendant has violated plaintiff's rights as provided by section 296 of the Executive Law of the State of New York by creating a sexually hostile work environment, discriminating against her on the basis of gender and retaliating against her for his prior statutorily-protected activity.

## V. **PRAYER FOR RELIEF**

43. WHEREFORE, plaintiff prays that this Honorable Court:
a) accept jurisdiction over plaintiff's federal and supplemental state causes of action;

b) empanel a jury to fairly decide this matter;

c) award to plaintiff compensatory and punitive damages as determined by a jury to recompense plaintiff for the violations of her rights and to punish defendant for the malicious neglect of plaintiff's rights as alleged herein;

d) order defendant to pay plaintiff the reasonable attorneys' fees and costs arising from prosecution of this matter, and

e) enter other relief which the Court deems just and equitable.

                    Respectfully submitted,

                    MICHAEL H. SUSSMAN [3497]

LAW OFFICES OF MICHAEL H. SUSSMAN
PO BOX 1005
GOSHEN, NEW YORK 10924
(845)-294-3991

Counsel for Plaintiff

Dated: January 24, 2005
      Goshen, New York

STATE OF NEW YORK: EXECUTIVE DEPARTMENT
STATE DIVISION OF HUMAN RIGHTS

EXEC. LAW ART. 15
SDHR NO:
9S-E-OS- -7943099-E

```
+------------------------------------------------+
|(State Division of Human Rights on the Complaint of)|
|                                                |
| Anne F. Durkin                    COMPLAINANT  |
|                                                |
|       - against -                              |
|                                                |
| Verizon, New York, Inc. and Valerie  RESPONDENT|
| Vaccaro, Susan McLynn, Natalie                 |
| McKenna, Lydia Roberts and Bill                |
| Mullen as aiders and abettors                  |
+------------------------------------------------+
```

TITLE VII: Federal Charge No:

I, Anne F. Durkin, residing at 78 Sterling St., Beacon, NY 12508, Tel. No. (845) 831-8167H, (914) 636-9989 (B) charge the above-named respondent whose address is 342 Hugenot St. New Rochelle, NY Tel. No. (914) 636-9989 with an unlawful discriminatory practice relating to Employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of Opposing Discrimination and Sex.

Date most recent or continuing discrimination took place 10/18/01.

The particulars are:

1. I am female. I was sexually harassed. I opposed a discriminatory practice.

2. I have worked for respondent since April 1981. On July 3, 2000, I was assigned to work at respondent's New Rochelle, N.Y. facility as a central office technician.

3. On or about the fall of 2000, I was subjected to sexually offensive behavior from female co-workers, Valerie Vaccaro and Natalie McKenna. Their behavior continued throughout my employment. Examples of their offensive behavior included but was not limited to the following: pulling open my shirt and telling a male worker to "look at this one."; spreading rumors that I did not wear underwear; telling workers to call me TPA "Trailer Park Anny"; writing "Don't sexually harass Anny" on a wall; commenting on my breasts; asking if I wore a special bra. Whenever I assisted a male worker, one of them would get on the intercom and make kissing, lovemaking sounds so that the entire work area could hear it.

Complaint: Title VII (INT.2) (1 of 2)
/cda
11/15/01

OS-E-OS-   -7943099-E

complained to my first and second line supervisors. I was told that I would have to get used to it, that this is what happens with techs, that I would have to change the way that I am. When they did not take action I filed complaints with respondent's internal EEO. The workers were just spoken to and no further action was taken against them.

5. After I complained their behavior worsened and I complained again. This time an EEO representative, Homer Mosely made a report and charged Natalie McKenna and Valerie Vaccaro with sexual harassment. However their behavior did not change.

6. I continued to be subjected to sexual comments about my body and the way I dressed. I was not receiving personal mail or phone calls at work. I have a child in school who is on medication and I needed to be accessible to his school. My work tools were thrown out. I was locked out of the workplace. My work was sabotaged.

7. In January 2001, I complained to Maryann Sniffen, a second line supervisor, who told me that I had to change the way I was. She told me of respondent's uniform dress code which required long sleeve, high neck lines, jeans and hard toe boots. She gave me a copy of this code from the 1950's. No one in the workplace dress like that. My co-workers wore shorts to work and I was not allowed to wear shorts. I believe I was being penalized for complaining.

8. In October 2001, there was a mixup in the holiday schedule and I brought it to management's attention. The situation was remedied and other workers were scheduled to work on the holidays. Valerie Vaccaro and others were upset. They thought I was getting special treatment. Vaccaro was telling workers that you had to have breasts to get what you wanted from management. Valerie Vaccaro and Susan McLynn showed up at work with their bras stuffed. They were saying that they were going to be me for Halloween. Bill Mullen, another co-worker, took pictures of them with their bras stuffed. Later, Valerie Vaccaro, Lydia Roberts and Susan McLynn were at work with their bras outside their shirts. When confronted by management they were defiant and said that they just wanted me out of there.

9. I felt that management had no ability to control the behavior of my co-workers. My co-workers' constant harassment and their sabotage of my work wore me down. Management did not take effective action to have them stop. I left the job on October 18, 2001 and am currently on leave.

10. Based on the foregoing, I charge the above named respondents with an unlawful discriminatory practice relating to employment by denying me equal terms, conditions and privileges of employment

Complaint: Title VII (INT.2) (Supplemental)
/cda
11/15/01